

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

*Michelle V. Larson*

**Signed April 24, 2024**

_____
**United States Bankruptcy Judge**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |  |
|---|---|---|
| **In re:** | § | **Chapter 11** |
|  | § |  |
| **NORTHWEST SENIOR** | § | **Case No. 22-30659-mvl11** |
| **HOUSING CORPORATION,** *et al.*, | § |  |
| Debtor. | § |  |
|  | § |  |
| **LEIF M. CLARK, TRUSTEE OF** | § |  |
| **THE EDGEMERE LITIGATION** | § |  |
| **TRUST,** | § |  |
| Plaintiff, | § |  |
|  | § |  |
| **v.** | § | **Adv. Pro. No. 22-03040-MVL** |
|  | § |  |
| **INTERCITY INVESTMENT** | § |  |
| **PROPERTIES, INC., and KONG** | § |  |
| **CAPITAL LLC,** | § |  |
| Defendants. | § |  |
|  | § |  |
|  | § |  |
|  | § |  |

## ORDER ON MOTIONS TO COMPEL

Before the Court are two motions: (1) the *Motion to Compel Production by the Plaintiff* [ECF No. 362] and the *Supplemental Brief Regarding the Lifespace Privilege Waiver and GrayRobinson Communications* [ECF No. 434] (collectively, the "**Lifespace Motion**") filed by Defendants Intercity Investment Properties, Inc. ("**ICI**") and Kong Capital LLC ("**Kong**") (collectively, the "**Defendants**") and (2) the Defendants' *Supplemental Motion to Compel Production of FTI Consulting, Inc. Documents and Brief in Support* [ECF No. 386] and *Supplemental Brief Regarding FTI Consulting, Inc. Documents* [ECF No. 442] (collectively, the "**FTI Motion**").

In the Lifespace Motion, the Defendants assert that Lifespace Communities, Inc. ("**Lifespace**"), a non-party to the above-captioned adversary proceeding (the "**Adversary Proceeding**") and the parent/sponsor of Northwest Senior Housing Corporation ("**Edgemere**" or the "**Debtor**"), waived its attorney client privilege when it disclosed communications between Lifespace and its counsel[1] (the "**Lifespace Communications**") to Edgemere and its counsel as part of a joint production. The Defendants also argue that the Lifespace Communications were improperly withheld on work product grounds. Additionally, the Defendants argue that Lifespace and Edgemere's communications with GrayRobinson (the "**GrayRobinson Communications**"), counsel to Edgemere's Board of Directors (the "**Edgemere Board**"), are not protected by the attorney client privilege and the work product doctrine for similar reasons as the Lifespace Communications.

On December 22, 2023, Lifespace filed its *Brief in Support of Response of Lifespace Communities, Inc. Regarding Defendant's Motion to Compel* [ECF No. 449] (the "**Lifespace**

---

[1] Over time, Lifespace's counsel included attorneys from Dorsey & Whitney LLP, Perkins Coie LLP, Cooley LLP, Locke Lord LLP, Norton Rose Fulbright, Gilmore & Bell, P.C., Ropes & Gray LLP, and Stewart Wiegland & Owens PC.

**Response**"). In the Lifespace Response, Lifespace contends the Lifespace Communications are protected from disclosure because Lifespace and Edgemere shared a common interest in the litigation. Lifespace further asserts that the communications were protected under the work product doctrine because Lifespace and Edgemere were never adverse, and the communications were made in anticipation of litigation. Similarly, Lifespace argues that the GrayRobinson Communications are protected by the common interest exception and the work product doctrine.

On January 8, 2024, the Defendants filed their *Reply to the Response of Lifespace Communities, Inc.'s to Defendants' Motion to Compel Production of the Lifespace Communications and GrayRobinson Communications* [ECF No. 455] (the "**Reply**"), by which the Defendants again assert that the Lifespace and GrayRobinson Communications are not covered by the work product doctrine. For the first time in the Reply, the Defendants substantively assert that the common interest doctrine does not apply under Texas law and that because Lifespace was not a party to the current litigation it waived the attorney client privilege as to the Lifespace Communications.

On January 12, 2024, the Court held a hearing (the "**January Hearing**") on the Lifespace Motion. Counsel appeared for the Defendants, Lifespace, and Leif M. Clark, Trustee of the Edgemere Litigation Trust (the "**Plaintiff**"). After hearing the testimony of Nick Harshfield ("**Mr. Harshfield**"), the Chief Financial Officer of Lifespace and Edgemere Board member, and the arguments of counsel on the underlying issues, the Court took the matter under advisement.[2]

In the FTI Motion, the Defendants assert that pre-petition communications with FTI Consulting, Inc. ("**FTI**") professionals and the Plaintiff (the "**FTI Communications**") are not

---

[2] Given the pendency of the FTI Motion and the related arguments, the Court held its decision on the Lifespace Motion in abeyance pending further hearing on the FTI Motion.

protected by the work product doctrine or the attorney client privilege. Similar to their arguments with regard to the Lifespace Communications, the Defendants argue that because Lifespace was included on many of the FTI Communications that the attorney client privilege with regard to those communications was waived. The Defendants also assert that because Lifespace was a potential adversary that the work product protection did not attach.

On January 29, 2024, the Plaintiff filed his *Supplemental Response Brief Regarding FTI Consulting, Inc. Documents* (the "**Supplemental Response**") [ECF No. 471]. In the Supplemental Response, the Plaintiff argues that the attorney client privilege was not waived as to the FTICcommunications because there was a common interest privilege that applied between Lifespace and Edgemere. The Plaintiff also asserts that the FTI Communications were protected by both the attorney client privilege and the work product doctrine.

On February 9, 2024, the Defendants filed their *Reply to Plaintiff's Supplemental Response Brief Regarding FTI Consulting, Inc. Documents* (the "**FTI Reply**") [ECF No. 474]. In the FTI Reply, the Defendants argue that the FTI Communications are not privileged because they were considered by a testifying expert when making his testimony. The Defendants also assert that the FTI Communications do not constitute work product because they were not made in anticipation of litigation. Finally, the Defendants echo their previous argument that the inclusion of Lifespace and GrayRobinson on the FTI Communications waived the privilege and protection.

On February 22, 2024, the Court held a hearing (the "**February Hearing**") on the FTI Motion. Counsel appeared for the Defendants, Plaintiff, and Lifespace. After hearing the testimony of Mr. Harshfield and the arguments of counsel on the underlying issues, the Court took the matter under advisement to be determined with the Lifespace Motion.

## I.     <u>Jurisdiction</u>

The Court has jurisdiction pursuant to 28 U.S.C. § 1334(b), and the matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(B). Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

## II.     <u>Factual and Procedural History</u>

On April 14, 2022, the Debtor filed a voluntary petition for bankruptcy under Chapter 11 of the Bankruptcy Code (the "**Bankruptcy Proceeding**").[3] On the same day, the Debtor filed its Complaint alleging certain causes of action against ICI and/or Kong. ECF No. 1. On June 28, 2022, the Defendants served a subpoena on Lifespace, the direct parent and sole member of Edgemere. ECF No. 64. Lifespace had appeared throughout the Bankruptcy Proceeding but is a non-party to the Adversary Proceeding. The Defendants separately served discovery on Edgemere. On August 1, 2022, Lifespace responded to the subpoena with its objections and responses asserting that it would produce the documents by way of the Edgemere. Edgemere began its production (the "**Joint Production**") shortly thereafter and did not distinguish between documents produced by Edgemere versus documents produced by Lifespace. Edgemere also produced a privilege log (the "**Joint Privilege Log**"), which also did not distinguish which party asserted the privilege.

On November 29, 2022, the Defendants filed their *Motion to Compel Lifespace Communities, Inc.'s Production of Documents* (the "**Initial Motion**") [ECF No. 238]. In the Initial Motion the Defendants asserted that Lifespace failed to comply with the subpoena because (1) the Defendants could not identify Lifespace-specific documents in Edgemere's production, and (2) Edgemere's privilege log inadequately identified documents withheld based on Lifespace's

---

[3] Voluntary Petition for Non-Individuals Filing for Bankruptcy, Case No. 22-30659-mvl11, ECF No. 1 (Bankr. N.D. Tex. 2022).

privilege. The Court held a hearing on the Initial Motion on January 25, 2023. ECF No. 287.

Shortly after the hearing, the Adversary Proceeding was stayed from February 1, 2023, through

July 19, 2023, to allow Edgemere's proposed chapter 11 plan to proceed through confirmation. *See*

ECF No. 298. The Court issued an Order on June 23, 2023 (the "**June Order**") [ECF No. 314]. In

the June Order, the Court found that the "related companies exception" applied to communications

between Edgemere, Lifespace and counsel "to the extent the underlying communications were

made in furtherance of legal services or are covered by some other applicable privilege." *Id.* at 6.

Further, the Court noted that it could not determine if an exception to the waiver of the attorney

client privilege applied until the substantive privilege had been established. *Id.* at 7. The Court

ruled that it could not ascertain whether privilege attached to the documents without reviewing the

documents and told parties to meet and confer to narrow the issues before pursuing *in camera*

review. *Id.* at 9-10.

After several status conferences addressing the Joint Production and Joint Privilege Log,

Lifespace filed its *Motion to Clarify the Order Regarding the Production of Documents by*

*Lifespace Communities, Inc.* (the "**Motion to Clarify**") [ECF No. 372] on October 17, 2023. The

Court held a hearing on the Motion to Clarify on November 7, 2023. At that hearing, Lifespace

offered a stipulation that "(1) Lifespace's and Plaintiff's respective documents productions would

have for all purposes been identical, and (2) all documents produced by Lifespace and Plaintiff to

Defendants are owned by both Lifespace and Plaintiff," which the Court later entered as an Order.

ECF No. 418.

The Defendants filed their *Motion to Compel Production by Plaintiff and Brief in Support*

(the "**Original Motion to Compel**") [ECF No. 362] and their *Omnibus Motion to Compel* (the

"Omnibus Motion") [ECF No. 363] on October 16, 2023. The Defendants also filed their

*Supplemental Motion to Compel Production of FTI Consulting, Inc. Documents* [ECF No. 386] on

November 1, 2023. The Court held a hearing on the three motions on November 9, 2023, during

which the Court instructed the parties to meet and confer regarding the issues raised in the hearing

and continued certain matters to November 29, 2023. *See* ECF Nos. 414, 415, & 417. On

November 29, 2023, the Court requested supplemental briefing on (1) whether Lifespace's post-

petition disclosure of documents to Edgemere served to waive privilege and/or protection over

communications between Lifespace and its counsel, (2) whether pre-petition communications

between Lifespace, Edgemere, and their respective counsel with GrayRobinson is privileged or

protected, and (3) whether there were any defects regarding FTI's production. ECF No. 432. The

Defendants filed the Lifespace Motion and the FTI Motion and this further litigation ensued.

### III.    <u>Analysis</u>

There are two primary questions before the Court. First, the Court must determine whether

the federal common interest exception to attorney client privilege applies to the disclosure of the

Lifespace, GrayRobinson, and FTI Communications. Second, the Court must determine whether

the work product doctrine allows the Plaintiff and Lifespace to withhold production of any of the

Lifespace, GrayRobinson, and FTI Communications. Specifically, the Court must determine if

there was any adversity between Edgemere and Lifespace that would waive work product

protection. The following constitutes the Court's analysis.

#### a.    <u>Attorney Client Privilege</u>

The Federal Rules of Evidence apply to this Adversary Proceeding, but Federal Rule of

Evidence 501 provides that, "state law governs privilege regarding a claim or defense for which

state law supplies the rule of decision." FED. R. EVID. 501. In this proceeding, every cause of action

in the Amended Complaint, except the equitable subordination claim (Count 8), is based on Texas law. Therefore, Texas law supplies the rule of decision for attorney client privilege issues in this Adversary Proceeding. Furthermore, the Court notes that neither party contests that Texas privilege law applies in this Adversary Proceeding. Because the Bankruptcy Proceeding is based on federal law, "the common law—as interpreted by United States courts in the light of reason and experience—governs a claim of privilege" as it relates to the Bankruptcy Proceeding. *Id.*

Texas law generally shields confidential communications made between clients and their counsel for the purpose of facilitating legal services from disclosure. *See* Tex. R. Evid. 503(b). The attorney client privilege applies to communications if it can be shown that: (1) the communication was confidential; (2) made between or among the client, lawyer, and their representatives; (3) for the purpose of facilitating the rendition of legal services; and (4) the privilege has not been waived. *Crider, Inc. v. Silgan Containers LLC*, No. 3:21-CV-1047-M, 2023 WL 479094, at *9 (N.D. Tex. Jan. 13, 2023). The burden of proof is on the privilege claimant. *Id.*

The Texas Supreme Court has recognized that privileges "represent society's desire to protect certain relationships." *Republic Ins. Co. v. Davis*, 856 S.W.2d 158, 163 (Tex. 1983). "It is the rule in Texas that the protections afforded by a privilege are waived by voluntary disclosure of the privileged documents." *Jordan v. Court of Appeals for Fourth Supreme Judicial Dist.*, 701 S.W.2d 644, 649 (Tex. 1985). More specifically, under Texas law, the attorney client privilege prohibits disclosure of confidential communications made for the purpose of facilitating the rendition of professional legal services to the client. Tex. R. Evid. 503(b)(1). The privilege can be claimed by the client or by the attorney on the client's behalf. *Id.* at 503(c).

Generally, the voluntary disclosure of privileged communications to a third party results in a waiver of the privilege. *Id.* at 511. There is an exception to this rule found in Rule 503(b)(1)(C) of the Texas Rules of Evidence. This exception protects

> confidential communications made for the purpose of facilitating the rendition of professional legal services … by the client or a representative of the client, or the client's lawyer or a representative of the lawyer, to a lawyer or a representative of a lawyer representing another party in a pending action and concerning a matter of common interest therein.

Tex. R. Evid. 503(b)(1)(C).

The Supreme Court of Texas has specifically distinguished the Texas exception contained in Texas Rule of Evidence 503(b)(1)(C) from the federal common interest privilege. *See In re XL Specialty Ins. Co.*, 373 S.W.3d 46, 51-52 (Tex. 2012) (distinguishing *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001)). The Supreme Court of Texas notes in *XL Specialty* that the Texas privilege is neither a common interest privilege, nor is it a joint defense privilege, but is "more appropriately termed an 'allied litigant' privilege." *Id.* at 52. The Texas allied litigant doctrine requires that communications be made in the context of a *pending action*. *Id.* at 51-52. "[N]o commonality of interest exists absent *actual* litigation." *Id.* at 52 (emphasis added). Additionally, the Texas allied litigant doctrine "protects communications made between a client, or the client's lawyer, to another party's lawyer, not to the other party itself." *Id.* Therefore, the allied litigant doctrine requires "the communication be made to a lawyer or her representative representing another party in a pending action." *Id.* at 54.

The Defendants first assert that certain of the Edgemere communications are no longer privileged because a dissolved company retains no privilege. Next, the Defendants further assert that Lifespace waived its attorney client privilege as to the Lifespace Communications because it disclosed those communications to Edgemere and its counsel via the Joint Production and by

allowing Edgemere to review its documents for privilege. Finally, the Defendants argue the attorney client privilege either did not attach or was waived, as it relates to the FTI and GrayRobinson Communications, because Lifespace and its counsel were included on the communications and the communications were not made by a party in a pending action. The Court will address each of these arguments in turn.

### i.   The Plaintiff May Claim Privilege Even Though Edgemere Dissolved

The Court will first address the Defendants' argument that the Plaintiff cannot claim the attorney client privilege for a corporation that has dissolved because the answer is so straightforward. Texas Rule of Evidence 503(c)(4) provides that the attorney client privilege may be claimed by "the successor, trustee, or similar representative of a corporation, association, or other organization or entity—whether or not in existence." Under article 3.2(j) of the Litigation Trust Agreement, the Plaintiff has the authority to "preserve, assert, or waive any privilege or any defense on behalf of the Litigation Trust or the Debtors."[4] Therefore, the attorney client privilege may be claimed by the Plaintiff even if the Debtor has been dissolved, which Mr. Harshfield testified was not the case at the February Hearing. As such, the Debtor's dissolution would not waive privilege.

### ii.   The Effect of Disclosing the Lifespace Communications to Edgemere

The Court will next address the effect of Lifespace disclosing the Lifespace Communications to Edgemere via the Joint Production and Edgemere's counsel's review thereof. The crux of the Defendants' argument is that the attorney client privilege was waived by the disclosure of the Lifespace Communications to Edgemere because Lifespace is not a party to the

---

[4] Notice of Filing of Supplemental Information to Plan Supplement, Case No. 22-30659-mvl11, ECF No. 1526 (Bankr. N.D. Tex. 2022).

Adversary Proceeding. The "allied litigant doctrine" only protects the disclosure of documents between parties to the same, active litigation. *See XL Specialties*, 373 S.W.3d at 52. Therefore, the Court must determine whether Lifespace is a party to the current litigation.

At the January Hearing, Lifespace argued that it is a party to the litigation because it is a subpoena party. Relying on *Russell v. Jones*, 49 F.4th 507 (5th Cir. 2022), Lifespace argues that a subpoena constitutes a suit or legal action because it is a coercive judicial process. Lifespace also argues that under *Broidy Cap. Mgmt. LLC v. Muzin*, 61 F.4th 984 (D.C. Cir. 2023), the term "party" is an expansive concept that includes a party like Lifespace because it would be bound by the Court's ruling and would be able to appeal this Order.

Lifespace's argument on this point is part of the incongruity in the parties' briefing and argument with regard to the instant Motions and occurring historically in these cases. The Defendants argued *for the first time* substantively in their Reply that Texas law governs the Court's determination of privilege pursuant to Texas Rule of Evidence 503(b)(1)(C) and particularly the "allied litigant doctrine" as laid out by the Texas Supreme Court in *XL Specialty*.[5] Lifespace does not dispute the applicability of state law, but nevertheless continues to point this Court to *federal* cases applying *federal* common law. The Court again notes that *XL Specialty* specifically distinguished federal common law from the Texas "allied litigant doctrine." *XL Specialties*, 373 S.W.3d at 52.

In an attempt to save its privilege, Lifespace argued at the January Hearing that the Court should apply the federal common interest privilege under the law of the case doctrine based on the Court's June Order. Under the law of the case doctrine, "when a court decides upon a rule of law,

---

[5] Prior to the Reply, the Defendants had relied on federal common law in their briefing in this Adversary Proceeding.

that decision should continue to govern the same issues in subsequent stages of the same case."
*Montante v. Fed. Bureau of Prisons*, No. 3:23-CV-2358-D-BH, 2023 WL 8006410, at *1 (N.D.
Tex. Nov. 17, 2023) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815-816
(1988)). However, trial courts have discretion on when to apply the doctrine. *Id.* Review of a prior
substantive ruling is appropriate in three instances—where there exists: (1) substantially different
evidence; (2) a change in controlling authority; or (3) a "clearly erroneous" decision that would
work a manifest injustice. *Id.* (citing *Free v. Abbott Lab'ys, Inc.*, 164 F.3d 270, 272 (5th Cir. 1999).
Additionally, the doctrine only applies to issues that were actually decided. *Clifford v. Gibbs*, 298
F.3d 282, 331 (5th Cir. 2002). "An issue is 'actually decided' if the court explicitly decided it or
necessarily decided it by implication." *Af-Cap, Inc. v. Republic of Congo*, 462 F.3d 417, 425 (5th
Cir. 2006).  Here, the Court has never been called upon to decide which substantive privilege law
applied. Although the Court would certainly have preferred a more timely assertion of the
Defendants' position on this issue and briefing more geared toward state law privilege, the Court
is behooved to apply the law that the Rules require and the parties ***agreed*** was applicable—Texas
state law.

As it regards Texas Rule of Evidence 503, the term "party" has been interpreted narrowly
to mean "only persons who are co-litigants, either co-plaintiffs or co-defendants, in the same
pending action, not in separate cases." *Benson v. Rosenthal*, No. CV 15-782, 2016 WL 3001129,
at *4 (E.D. La. May 25, 2016)(citing *XL Specialty*, 373 S.W.3d at 52). While the federal common
interest privilege applies to co-defendants in actual litigation as well as to communications
between potential co-defendants and their counsel, the Texas Supreme Court distinguished the
federal privilege from the Texas allied litigant doctrine, clarifying that the communications must
be made in the context of a pending action. *See XL Specialty*, 373 S.W.3d at 52 n. 7. Therefore,

12

under Texas law, one must be an actual co-litigant in pending litigation for a communication to fall under the allied litigant exception to waiver of the attorney client privilege. *See id.*

The Court notes that the Lifespace Communications were *Lifespace only* documents between Lifespace and its counsel, which, Lifespace's only witness, Mr. Harshfield, testified at the January Hearing, were not accessible by Edgemere employees despite the two entities sharing a server. Because Lifespace is Edgemere's parent/sponsor and is not a co-plaintiff or co-defendant to the Adversary Proceeding, it is not a "party" as that term is used in the Texas allied litigant doctrine. Therefore, the allied litigant doctrine does not serve to protect the Lifespace Communications from waiver. The Court will note that Lifespace's waiver of the attorney client privilege is a consequence of the production method that it unilaterally employed with Edgemere. Lifespace freely produced its private communications with its counsel to Edgemere and Edgemere's counsel for review. Therefore, the attorney client privilege has been waived as to the Lifespace Communications.

### iii. The Effect of Lifespace Being Included on the GrayRobinson and FTI Communications

The GrayRobinson and FTI Communications are distinct from the Lifespace Communications based on when and how the alleged waiver of the attorney client privilege took place. The Defendants claim that the GrayRobinson Communications are not privileged because the communications contained Lifespace's outside counsel, Edgemere's outside counsel, and Edgemere's restructuring consultants. Each of the disputed GrayRobinson Communications were dated pre-petition, spanning March to April 2022, which the Defendants also claim waives the privilege because they did not take place during a pending action. The Defendants raise similar arguments as to the FTI Communications, asserting that the inclusion of Lifespace on the FTI

Communications served as a third party disclosure that either prevented the privilege from attaching or waived the privilege entirely. Additionally, the Defendants argue that because the FTI Communications took place pre-petition they would also fail to meet the pending action requirement under Texas law. By way of contrast, the attorney client privilege with regard to the Lifespace Communications was waived *after* the commencement of the Adversary Proceeding by disclosing Lifespace only communications to Edgemere via the Joint Production.

Having reviewed the Joint Privilege Log, as well as numerous documents *in camera*, over the course of this Adversary Proceeding, it is without question that communications exist wherein legal advice was secured for two different proceedings, the Bankruptcy Proceeding and the Adversary Proceeding. As already mentioned, any communications made in furtherance of the Adversary Proceeding are governed by Texas privilege law because the vast majority of the causes of action in the Amended Complaint are state law causes of action. *See* Fed. R. Evid. 501. However, any communications made in furtherance of the Bankruptcy Proceeding would be governed by federal common law.

Under federal common law, the attorney client privilege is one of the oldest recognized privileges for confidential communications. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The privilege is intended to encourage "full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice." *Id.* The attorney client privilege applies to communications if it can be shown that: (1) the communication was confidential; (2) made to a lawyer or his subordinate; (3) for the primary purpose of securing either legal opinion or legal services, or assistance in a legal proceeding. *Jolivet v. Compass Group USA, Inc.*, 340 F.R.D. 7, 19 (N.D. Tex. 2021) (citing *United States v. Robinson*, 121 F.3d 971, 974 (5th Cir. 1997)).   The client retains the attorney client

privilege unless the privilege has been waived. *See id.* at 20. The privilege is so highly regarded that courts have found that the privilege survives the death of the client. *Swindler & Berlin v. United States*, 524 U.S. 399, 410 (1998).

Additionally, federal common law recognizes the "related companies exception" to waiver of the attorney client privilege. *See Am. Airlines, Inc. v. Travelport Ltd.*, No. 4:11-CV-244-Y, 2012 WL 12884822, at *5 (N.D. Tex. July 16, 2012). Under the related companies exception, "corporations related through common ownership or control are treated as one entity for attorney-client privilege purposes." *Id.* (quoting *Pasadena Refining Sys. Inc. v. United States*, No. 3:10-CV-0785-k(BF), 2011 WL 1938133, at *2 (N.D. Tex. Apr. 26, 2011)). This means that "the disclosure of communications between a parent and its majority-owned subsidiaries does not result in a waiver of the attorney-client privilege." *Id.*

The Court previously held in its June Order that the related companies exception applies to "communications between Lifespace, the Plaintiff, and counsel to the extent the underlying communications were made in furtherance of legal services or are covered by some other applicable privilege." ECF No. 314 at 6. The Court further clarified that the disclosure must be made between the entities "for the purpose of eliciting assistance from the attorney in rendering legal advice or services." *Id.* at 8.  In the Bankruptcy Proceeding, Edgemere, the Edgemere Board, and Lifespace all shared a common legal interest. Mr. Harshfield wholeheartedly testified at both the January and February Hearings that there was never any adversity between Edgemere and Lifespace. Therefore, any joint communications that were in furtherance of the Bankruptcy Proceeding would still be privileged under the federal related companies exception.

The existence of the current Adversary Proceeding does not waive the attorney client privilege as to the communications that were made in furtherance of the Bankruptcy Proceeding.

Therefore, the Court finds that any of the FTI and GrayRobinson Communications that were made in furtherance of the Bankruptcy Proceeding are privileged, but that the attorney client privilege has been waived as to any FTI and GrayRobinson Communications that were made in furtherance of the Adversary Proceeding given that the communications would fail to meet the pending action requirement having occurred prior to the Adversary Proceeding being initiated.

In sum, Lifespace waived its individual attorney client privilege as to the Lifespace Communications by disclosing them to Edgemere as part of the Joint Production. With regard to the GrayRobinson and FTI Communications that were prepared in furtherance of the Bankruptcy Proceeding, those communications are privileged, but the attorney client privilege has been waived as to those prepared in furtherance of the Adversary Proceeding.

### b. **Work Product Protection**

The work product doctrine is distinct and broader than the attorney client privilege. *Adams v. Mem'l Hermann*, 973 F.3d 343, 349 (5th Cir. 2020). Although the issue of attorney client privilege is determined by state law, federal law governs whether documents are exempt from discovery under the attorney work product doctrine because work product is not a substantive privilege within the meaning of Federal Rule of Evidence 501. *Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 875 (5th Cir. 1991). Pursuant to Rule 26(b)(3) of the Federal Rules of Civil Procedure (the "**Rules**"), as made appliable by Rule 7026 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the federal work product doctrine provides for protection of documents and tangible things prepared by or for a party or that party's representative "in anticipation of litigation or for trial," whether those materials were prepared by the attorney or by agents of the attorney. *Adams*, 973 F.3d at 349. A document need not be generated during an ongoing lawsuit to qualify for work product protection. *McKinney/Pearl Rest. Partners, L.P. v.*

*Metro. Life Ins. Co.*, No. 3:14-CV-2498-B, 2016 WL 2997744, at *6 (N.D. Tex. May 25, 2016). Nevertheless, "the primary motivating purpose" behind the creation of the document must be to aid in possible future litigation. *Id.* As the Advisory Committee Notes to Rule 26(b)(3) state, "[m]aterials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes are not under the qualified immunity provided by this subdivision." FED. R. CIV. P. 26(b)(3), Adv. Comm. Notes.

The Defendants advance three main arguments about why the Lifespace Communications are not protected by the work product doctrine. First, the Defendants argue that Lifespace is not a party and therefore may not advance work product protection under Rule 26(b)(3)(A). Second, Defendants assert that the Lifespace Communications have not been shown to have been created either for use in the litigation or in anticipation of litigation. Third, Defendants claim that Lifespace waived the work product protection when it disclosed the documents to Edgemere, which would be considered an adversary or potential adversary. The Defendants raise similar arguments as to the GrayRobinson Communications. The Defendants also claim that Lifespace had no standing to assert the work product protection on behalf GrayRobinson's client, the Edgemere Board.

The Defendants advance a similar waiver argument regarding the FTI Communications. Particularly, the Defendants argue that the FTI Communications were disclosed to an adversary or potential adversary in Lifespace. Furthermore, the Defendants argue that documents that testifying expert FTI's Chad Shandler ("**Mr. Shandler**") considered when creating his expert report are not privileged under Rule 26(a)(2)(B).

### i. Lifespace may assert work product protection as a non-party to the Adversary Proceeding

The Court will first address whether Lifespace may properly claim work party protection as a non-party to the Adversary Proceeding. Under Rule 26(b)(3)(A), "a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." FED. R. CIV. P. 26(b)(3)(A). Although the text of the rule seems to limit work product protection only to parties in the litigation, federal courts have extended work product protection beyond the strict terms of the rule to third parties when doing so accords with the purposes of the privilege set out in *Hickman v. Taylor*, 329 U.S. 495, 511 (1974). *See In re Student Fin. Corp*, No. 02-11620 JBR, 2006 WL 3484387, at *10 (E.D. Pa. Nov. 29, 2006); *Carnes v. Crete Carrier Corp.*, 244 F.R.D. 694, 699 (N.D. Ga. 2007); *Allied Irish Banks, P.L.C. v. Bank of Am., N.A.*, 252 F.R.D. 163, 175 (S.D.N.Y. 2008). Thus, courts should consider the purposes for the work product protection as articulated in *Hickman*: preventing discovery from chilling attorneys' ability to formulate their legal theories and prepare their cases, preventing opponents from freeloading off their adversaries' preparation, and preventing disruption of ongoing litigation. *Hickman*, 329 U.S. at 511.

Here, the Defendants seek access to communications between Lifespace and its counsel as well as communications between the Edgemere Board and its counsel GrayRobinson. Lifespace has repeatedly claimed that these communications were prepared in anticipation of litigation, either the Bankruptcy or the Adversary Proceeding. Furthermore, Mr. Harshfield testified at the January hearing that there was never any divergence in interests between Lifespace and Edgemere. The evidence indicates that Lifespace shared a common interest with the Plaintiffs and the Edgemere Board in pursuing claims against the Defendants. The disclosure of work product from the Lifespace Communications and the GrayRobinson Communications would implicate the purposes

of the privilege articulated in *Hickman*. Namely, it would chill the attorneys' ability to formulate legal theories and prepare cases because the attorneys would not be able to adequately prepare without the fear of disclosure to a potential adversary. Additionally, it would enable the Defendants to utilize the Lifespace and GrayRobinson Communications as their own and thereby free ride on the "wits borrowed from this adversary." *Id.* at 517 (Jackson, J., concurring). Therefore, the Court finds that Lifespace has borne its burden to justify an assertion of work product protection as to the aforementioned communications in this case.

### ii.  Work Product Protection was Not Waived

Next, the Court addresses the issue of waiver. Unlike the attorney client privilege, it is harder to waive work product protection because work product protection exists to "promote the adversary system by safeguarding fruits of attorney's trial preparation from discovery attempts of opponents." *Shields v. Sturm, Ruger & Co.*, 864 F.2d 379, 382 (5th Cir. 1989). Therefore, merely disclosing protected material to a third person is insufficient to waive the work product protection. *Id.* Disclosure to a third person only waives the work product protection if protected material is given to either an adversary or "treated in a manner that substantially increases the likelihood that an adversary will come into possession of the material." *McKinney*, 2016 WL 2997744, at *7 (quoting *Advance Technology Incubator, Inc. v. Sharp Corp.*, 2009 WL 4432569, at *2 (E.D. Tex. 2009)). The burden of proving waiver of work product protection falls on the party asserting the waiver. *Id.*

The Defendants argue that Lifespace, Edgemere, and the Edgemere Board waived their work product protection as to the three sets of communications because they were potential adversaries. The Defendants argue that Lifespace and Edgemere were adversaries or potential adversaries because Lifespace was a creditor of Edgemere at the time of disclosure. The Plaintiffs

and Lifespace counter that they were never adverse in the actual sense even during the Bankruptcy Proceeding. Lifespace also argues that even if they were ever potentially adverse in the Bankruptcy Proceeding, they were never adverse to the Plaintiff with regard to the claims asserted in this Adversary Proceeding.

The Defendants rely heavily on the Fifth Circuit's opinion in *Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373 (5th Cir. 2010) to show that disclosure to potential adversaries waives the privilege. In *Ecuadorian Plaintiffs*, a discovery dispute was initiated under 28 U.S.C. § 1782(a) for use in a foreign proceeding. *Id.* at 375. The defendant brought the discovery dispute to obtain information to challenge the impartiality of a court appointed expert and that expert's report. *Id.* at 376. Particularly, the defendant sought discovery of information used by the expert when making his report. *Id.* "Although work product immunity is not automatically waived by disclosure of protected materials to third parties," the Fifth Circuit held that disclosure of documents waives work product protection if it has "substantially increased the opportunities for potential adversaries to obtain the information." *Id.* at 378. By disclosing documents to a court appointed expert, the plaintiffs in *Ecuadorian Plaintiffs* waived work product immunity, among other things, by virtue of Rule 26(a)(2)(b). *Id.*

*Ecuadorian Plaintiffs* is distinguishable from this case because that decision did not address the issue of parent and subsidiary corporations sharing documents between each other in real time. In this context, numerous courts have found that documents shared between parent and subsidiary corporations do not waive the protection provided by the work product doctrine. *See Matter of Celotex Corp.*, 196 B.R. 596, 601 (Bankr. M.D. Fla. 1996) (holding that a debtor sharing documents with its parent corporation did not waive work product protection); *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 14MD2542VSBHBP, 2019 WL 6736132, at *9

20

(S.D.N.Y. July 22, 2019), report and recommendation adopted, No. 14MD2542VSBHBP, 2019 WL 4359551 (S.D.N.Y. Sept. 12, 2019) (holding that sharing work product among related companies generally is not inconsistent with the work product protection); *Tate & Lyle Americas, LLC, v. Glatt Air Techniques, Inc.*, No. 13-2037, 2015 WL 4647561, at *5 (C.D. Ill. July 31, 2015) (holding that documents remain protected under the work product doctrine if disclosed to a party with a shared legal interest in litigation).

Further, at the January Hearing, Mr. Harshfield credibly testified that there was never any adversity between Edgemere and Lifespace, even during the Bankruptcy Proceeding. Mr. Harshfield testified repeatedly at the January Hearing that he did not recall any divergence of interests between Lifespace and Edgemere. Likewise, there was no evidence to indicate that there was any divergence of interests between Edgemere and Lifespace with regard to the claims in this Adversary Proceeding. To be certain, the Edgemere corporate structure demonstrates a lack of adversity between Lifespace and Edgemere because Lifespace was the parent/sponsor of Edgemere, the two entities shared employees, and documents were stored on the same corporate server. While Mr. Harshfield admittedly wore "two hats" as a representative of both companies, this was not symbolic of adversity, but rather demonstrates the unity between Lifespace and Edgemere built into their corporate structure. Although Lifespace was a creditor of Edgemere during the Bankruptcy Proceeding, the Court finds that the corporate structure and the testimony of Mr. Harshfield demonstrate that there was no actual divergence of interests during the Bankruptcy Proceeding that would have caused Lifespace and Edgemere to become adversaries in the true sense.  Nor did the Defendants bear their burden of proving Lifespace was ever adverse to the Edgemere Board. Therefore, the Court finds that Lifespace, Edgemere, and the Edgemere

Board did not waive their work product protections by disclosing the communications to each other.

### iii. The Connection Between the Communications and Anticipated Litigation

Having determined that Lifespace has standing to assert work product protection and that work product protections have not been waived, the Court will next address the Defendant's argument that the Plaintiff and Lifespace have not shown that there is a link between the disputed communications and the litigation. Defendants argue that many of the Lifespace Communications pre-date any discussions between Edgemere and the Defendants that would tie them to the Adversary Proceeding. The Defendants further assert that even if the Lifespace Communications relate to the Bankruptcy Proceeding that they occurred far before the petition date. Likewise, the Defendants also argue that the FTI Communications do not relate to anticipated litigation because they relate to "projections, audits, schedules, and/or accounting" rather than legal issues. ECF No. 474.

Factors for determining the primary motivation for the creation of a document include the counsel's involvement in the generation of the document, whether it was routine practice to prepare that type of document, or whether the document was prepared in response to a particular circumstance. *Navigant Consulting, Inc. v. Wilkinson*, 220 F.R.D. 467, 477 (N.D. Tex. 2004). If the document would have been created without regard to the whether litigation was expected to ensue, it was made in the ordinary course of business and not in anticipation of litigation. *See id.*

The burden is on the party seeking work product protection to show that the materials at issue were prepared in anticipation of litigation. *Hodges, Grant & Kaufmann v. U.S. Gov't, Dep't of the Treasury, I.R.S.*, 768 F.2d 719, 721 (5th Cir. 1985). A party seeking work product protection

must clearly show which production requests they are objecting to and the reason for that objection. *Navigant*, 220 F.R.D. at 473. A general allegation of work product protection is not sufficient. *Id.* Generally, the proponent must provide sufficient facts either through detailed affidavits or other evidence to enable the court to determine whether the documents constitute work product. *Id.* If a party meets its burden and proves that the materials sought warrant work product protection, the party seeking discovery must prove why those materials should still be produced. *Hodges*, 768 R.2d at 721. If the court cannot decide based on the evidence and the arguments of counsel, it may resort to an *in camera* review of documents to assist the court in conducting the analysis. *Navigant*, 220 F.R.D. at 473-74.

Mr. Harshfield submitted affidavits and testified as a witness at both hearings as to the nature of the withheld documents. Mr. Harshfield testified that Edgemere and Lifespace anticipated litigation once the forbearance agreement was allowed to terminate. Mr. Harshfield testified that Lifespace, Edgemere, and the Edgemere Board all retained counsel to provide legal advice in anticipation of potential bankruptcy litigation. Mr. Harshfield also testified that the communications with FTI and its various professionals were made in anticipation of litigation because they helped determine what Edgemere would need from a financial perspective. The Harshfield Declaration provides a blanket assertion that the communications were made for "soliciting and obtaining legal advice and attorney work product." ECF No. 462, Exh. 6.

During cross examination, however, the Defendants questioned Mr. Harshfield about whether specific communications found on the Joint Privilege Log were made in anticipation of litigation. Mr. Harshfield could not specifically determine whether any of the communications were made in anticipation of litigation based on the Joint Privilege Log entries. Likewise, Mr. Harshfield admitted that he would not be able to identify, based on the Joint Privilege Log, whether

any or each of the specific emails or attachments were created specifically in anticipation of litigation. The Court does not believe that the blanket assertion is sufficient to carry the Plaintiff's and Lifespace's assertions of work product protection in light of Mr. Harshfield's testimony.

In order to determine whether the work product protection properly attaches to the withheld communications, the Court must conduct an *in camera* review of the communications. The Court will review whether the communications were prepared in anticipation of litigation and whether they are legal in nature as opposed to commercial. Therefore, the Court orders the parties to meet and confer and deliver 100 documents across the Lifespace, FTI, and GrayRobinson Communications to the Court for an *in camera* review within 21 days of the date of this Order.

### iv.  The Impact of a Testifying Expert on Work Product Protection

Finally, the Court will address the documents used by the Plaintiff's expert, Mr. Shandler of FTI, when making his expert report. The Defendants argue that documents used by Mr. Shandler when making his expert report in the Adversary Proceeding (the "**Adversary Report**") [ECF No. 475, Exh. 14], as well as his declaration in the Bankruptcy Proceeding (the "**Bankruptcy Declaration**") [ECF No. 475, Exh. 15], are not protected by the work product doctrine.

Rule 26(b)(4)(C) protects as work product "communications between the party's attorney and any [retained, testifying expert] witness," unless the communications fall within one of the three listed exceptions: (i) if they relate to compensation for the expert's study or testimony; (ii) if they identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or (iii) if they identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed. FED. R. CIV. P. 26(b)(4)(C). Before the 2010 amendments to the Rules, courts generally required the disclosure of

*all* documents given to testifying experts. *Antero Res. Corp. v. C&R Downhole Drilling Inc.*, No. 4:16-CV-668-Y, 2017 WL 11685172, at *3 (N.D. Tex. Feb. 24, 2017). This broad disclosure had undesired effects such as impeding interactions and communications between counsel and experts. *Id.* These effects led to the 2010 change in the Rules that "created an express but limited work-product protection for collaborative interactions between counsel and testifying experts." *Id.* (quoting *Davita Healthcare Partners, Inc. v. United States*, 128 Fed. Cl. 584, 588 (2016)).

Exception (ii) of Rule 26(b)(4)(C) works in conjunction with Rule 26(a)(2)(B), which requires retained experts to provide a written report that contains various items, including facts or data considered by the witness in forming his or her opinions. FED. R. CIV. P. 26(a)(2)(B). Additionally, the Advisory Committee's Note to the 2010 amendment makes clear that the focus on "facts and data" in exception (ii) was meant to "limit disclosure to material of a factual nature by excluding theories or mental impressions of counsel." FED. R. CIV. P. 26(a)(2)(B), Adv. Comm. Notes. The Advisory Committee also notes that "facts or data" is intended to be "interpreted broadly to require disclosure of any material considered by the expert, from whatever source, that contains factual ingredients." *Id.*

Here, the Defendants assert that since Mr. Shandler is a testifying expert in the Adversary Proceeding that work product protection does not attach to any communications that identify facts or data that he considered when making the Adversary Report or the Bankruptcy Declaration. The Defendants further assert that any documents that relate to any of the topics mentioned either the Bankruptcy Declaration or the Adversary Report would not be protected under the work product doctrine. The Court does not agree with the Defendants' expansive view that Rule 26(b)(4)(C) includes the documents relied upon by Mr. Shandler in both the Adversary Report as well as the Bankruptcy Declaration. The scope of the exceptions of Rule 26(b)(4)(C) only apply to the current

proceeding, which in this case is the Adversary Proceeding. The only documents that the Defendants are entitled to are the documents that Mr. Shandler considered when making the Adversary Report. Plaintiff's counsel asserts that the documents that Mr. Shandler considered when making the Adversary Report were identified in the report and previously produced to the Defendants. Therefore, the Defendants are not entitled further production.

In sum, Lifespace has standing to assert work product protection as a non-party to the Adversary Proceeding because it would further the purposes of the doctrine as laid out in *Hickman*. Additionally, work product protection was not waived because there was no adversity between Lifespace, Edgemere, and the Edgemere Board. For the Court to determine whether work product protection affirmatively and substantively applies, i.e., whether the documents were made in anticipation of litigation and legal in nature, the Court will conduct *in camera* review of a subset of the documents. Finally, the Defendants are not entitled to any further documents that Mr. Shandler considered when making the Adversary Report because they were listed in the report and already produced to the Defendants.

## II. <u>Conclusion</u>

The Court encourages the Defendants, Lifespace, and the Plaintiffs to continue to work towards a resolution of discovery issues. It is important to note that although the attorney client privilege may be waived as to certain communications in accordance with this Order, the work product protection may still shield such communications from production. Accordingly, based upon the foregoing and the record before the Court, it is hereby

**ORDERED** that the Lifespace Motion is **GRANTED, in part**, as set forth above; it is further

**ORDERED** that the FTI Motion is **GRANTED, in part**, as set forth above; it is further

**ORDERED** that the Plaintiffs amend the Joint Privilege Log and produce documents in accordance with the terms of this Order within 21 days hereof.

**###END OF ORDER###**