

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed June 3, 2024**

_____
**United States Bankruptcy Judge**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | **Chapter 11** |
| | § | |
| **NORTHWEST SENIOR** | § | **Case No. 22-30659-mvl11** |
| **HOUSING CORPORATION,** *et al.*, | § | |
| Debtor. | § | |
| | § | |
| | § | |
| **LEIF M. CLARK, TRUSTEE OF** | § | |
| **THE EDGEMERE LITIGATION** | § | |
| **TRUST,** | § | |
| Plaintiff, | § | |
| | § | |
| **v.** | § | **Adv. Pro. No. 22-03040-MVL** |
| | § | |
| **INTERCITY INVESTMENT** | § | |
| **PROPERTIES, INC., and KONG** | § | |
| **CAPITAL LLC,** | § | |
| Defendants. | § | |
| | § | |

### ORDER GRANTING IN PART AND DENYING IN PART THE DEFENDANTS'
### MOTION FOR JUDGMENT ON THE PLEADINGS

Before the Court is the *Motion for Judgment on the Pleadings on Counts 1, 2, 3, 4, 5, 7, and 8 of the First Amended Complaint* [ECF No. 445] (the "**Motion**") filed by Defendants Intercity Investment Properties, Inc. ("**ICI**") and Kong Capital ("**Kong**") (collectively, the "**Defendants**") on December 12, 2022, which seeks judgment on counts 1, 2, 3, 4, 5, 7, and 8 of the First Amended Complaint [ECF No. 422] (the "**Amended Complaint**") filed by Plaintiff Leif M. Clark, Trustee of the Edgemere Litigation Trust (the "**Plaintiff**" or "**Trustee**") on November 12, 2023. On January 26, 2024, the Plaintiff filed a *Response to Defendants' Motion for Judgment on the Pleadings* [ECF No. 469] (the "**Response**"). On February 9, 2024, the Defendants filed their *Reply to Plaintiff's Response to Defendants' Motion for Judgment on the Pleadings* [ECF No. 473] (the "**Reply**"). On February 22, 2024, the Court held a hearing on the Motion (the "**Hearing**"). ECF No. 483. Counsel for both the Plaintiff and the Defendants gave oral argument. The Court took the Motion under advisement.

After considering the briefing and oral arguments of counsel, the Court concludes that the Motion should be GRANTED in part and DENIED in part as more fully detailed in this Order. The following constitutes the Court's analysis underlying the ruling herein.

## I. Jurisdiction and Venue

The Court has jurisdiction pursuant to 28 U.S.C. § 1334(b), and the matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(B). Venue is proper in this district pursuant to 28 U.S.C. §1409(a).

## II. Factual and Procedural History

On April 14, 2022, Northwest Senior Housing Corporation ("**Edgemere**" or the "**Debtor**") filed a voluntary petition for bankruptcy under Chapter 11 of the Bankruptcy Code (the

"**Bankruptcy Proceeding**").[1] On the same day, the Debtor filed its Complaint alleging seven causes of action against ICI and/or Kong (the "**Adversary Proceeding**"). ECF No. 1. These causes of action included: (1) Breach of Contract (NDA) against ICI; (2) Promissory Fraud against ICI; (3) Tortious Interference with Existing Contractual and Business Relations against both Defendants; (4) Tortious Interference with Prospective Contractual and Business Relations against both Defendants; (5) Civil Conspiracy against both Defendants; (6) Equitable Subordination against ICI; and (7) Reformation of the Lease against ICI.

On June 1, 2022, the Defendants filed their *Motion to Dismiss for Failure to State a Claim* [ECF No. 34] (the "**Motion to Dismiss**"), which sought to dismiss the *Complaint* [ECF No. 1] (the "**Original Complaint**"). The Court held a hearing on the Motion to Dismiss on July 21, 2022. On August 24, 2022, the Court issued its *Order Granting in Part and Denying in Part the Defendant's Motion to Dismiss the Complaint for Failure to State a Claim* [ECF No. 99] (the "**Dismissal Order**"). In the Dismissal Order, the Court found that the Original Complaint, other than the claim for tortious interference, contained sufficient factual allegations to state a plausible cause of action, and therefore granted in part and denied in part the Motion to Dismiss ECF No. 99, at 22.

On November 13, 2023, the Plaintiff filed the Amended Complaint alleging many of the same causes of action as well as some new causes of action, including: (1) Breach of the NDA against both Defendants; (2) Promissory Fraud against ICI; (3) Tortious Interference with Existing Contractual and Business Relationships against Kong; (4) Tortious Interference with Prospective Contractual and Business Relationships against both Defendants; (5) Business Defamation and Disparagement against both Defendants; (6) Breach of Forbearance Agreement against ICI; (7)

---

[1] Voluntary Petition for Non-Individuals Filing for Bankruptcy, Case No. 22-30659-mvl11, ECF No. 1 (Bankr. N.D. Tex. 2022).

Civil Conspiracy against Both Defendants; and (8) Equitable Subordination against ICI. ECF No. 422.

In brief summary, the Plaintiff alleges in the Amended Complaint that the Defendants engaged in a sustained campaign to destroy Edgemere and its business so ICI could seize control of the property to transition to some alternative or competitive business opportunity on the property. *Id.* at 4. To accomplish their objective, the Plaintiff alleges that the Defendants falsely led Edgemere into believing that ICI would make an earnest attempt to negotiate a restructuring of the Ground Lease so as to obtain Edgemere's confidential financial information. *Id.* at 17-23. Accordingly, the parties entered into a Forbearance Agreement and a Confidentiality and Non-Disclosure Agreement (the "**NDA**"). *Id.* at 11. The Plaintiff alleges that the Defendants disclosed Edgemere's confidential information to the press, Edgemere's residents, and Texas regulators in an effort to sow distrust, further damage the business of Edgemere and capitalize on the alternative business opportunity. *Id.* at 63-66. As such, the Plaintiff sued to address the alleged breaches, and fraudulent and/or inequitable conduct.

### III.    Judgment on the Pleadings Standard

A motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure (the "**Rules**"), as incorporated by Rule 7012 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), is subject to the same standard as a motion to dismiss under Rule 12(b)(6). *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). The central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief. *Id.* Although the Court must accept the factual allegations in the pleadings as true, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility requires "more than an unadorned, the-defendant-

unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This plausibility requirement sits somewhere between possible and probable, and it is satisfied where the plaintiff's pleaded facts allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*

## IV.   Analysis

The question for the Court at this stage of the litigation is whether the factual allegations made by the Plaintiff are plausible. *See Twombly*, 550 U.S. at 570. The Court finds that most of the allegations made in the Amended Complaint have been sufficiently pleaded to meet the plausibility standard.

### a.   Count 1 – Breach of the NDA

The Plaintiff has pleaded plausible factual allegations as to ICI's alleged breach of the NDA but has not as to Kong's alleged breach of the NDA. Therefore, the Court will grant the Defendants' Motion as to the first cause of action as to Kong, but deny it as to ICI. In the Amended Complaint, the Plaintiff alleges that ICI and Kong breached their obligations under the NDA by disclosing Edgemere's confidential information to third parties to disrupt Edgemere's business operations. ECF No. 422 at ¶¶ 147-169. The Defendants contend that the Plaintiff's claim for breach of the NDA fails for two reasons: (1) the Plaintiff does not allege facts supporting its performance or tender of performance and (2) Kong was not a party to the NDA. ECF No. 444 at 3-4.

#### i.   The Plaintiff Pleaded Sufficient Facts that Edgemere Performed Under the NDA

Under Texas law, to assert a claim for breach of contract, the Plaintiff must plead facts establishing: (1) the existence of a valid contract, (2) that Edgemere performed its duties under the contract, (3) that ICI breached the contract, and (4) that Edgemere suffered damages as a result of

ICI's breach. *See Lewis v. Bank of Am. NA*, 343 F.3d 540, 544-45 (5th Cir. 2003). The Defendants claim that the Plaintiff omits any allegation that Edgemere performed or tendered performance under the NDA. ECF No. 444 at 4. Specifically, the Defendants assert that the Plaintiff failed to state that Edgemere and Lifespace maintained the confidentiality of ICI's confidential information as required by the NDA. *Id.* The Plaintiff counters that the Amended Complaint includes a litany of allegations that establish that Edgemere performed under the NDA, including the provision of confidential information to ICI. ECF No. 469 at 13.

The Court finds that the Amended Complaint contains sufficient facts that can, in the light most favorable to the Plaintiff, be construed to state plausibly that Edgemere performed under the NDA. In the Amended Complaint, the Plaintiff states that "Edgemere provided Intercity with a substantial volume of highly confidential and proprietary information, including current and forward-looking financial and operational information relating to Edgemere and the Community[2] pursuant to the NDA." ECF No. 422 at ¶ 34. These facts are sufficient to establish the element of tender of performance under the NDA in support of its claim for breach of contract against ICI. Therefore, the Court denies the Motion as to Count 1 for breach of the NDA against ICI.

## ii.  **Kong Was Not a Party to the NDA**

The Defendants contend that Plaintiff's claim for breach of the NDA against Kong fails because Plaintiff has not alleged any facts to establish privity of contract between Edgemere and Kong. ECF No. 444 at 3. "Texas law requires privity of contract to assert a breach of contract claim, meaning a non-party to a contract typically cannot be sued for breach of contract." *Fid. Funding Bus. Credit, Ltd. v. Republic Bus. Credit LLC*, No. 3:16-CV-2492-B, 2017 WL 4923880,

---

[2] Capitalized terms not defined herein shall adhere to the meaning ascribed to such terms in the Amended Complaint.

at *2 (N.D. Tex. Oct. 30, 2017) (citing *Chico Auto Parts & Serv., Inc. v. Crockett*, 512 S.W.3d 560, 569 (Tex. App. – El Paso 2017, pet. denied)). Courts have found some narrow exceptions to this rule, finding that contracts may be enforced by or against non-parties "through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver, and estoppel." *Mayers v. Addison Brown, LLC*, No. 3:19-CV-3043-S, 2020 WL 7646973, at *2 (N.D. Tex. Dec. 22, 2020). However, the party seeking to hold a non-party liable for breach of contract has the burden to prove that the non-party obligated itself under the contract. *Id.*

Here, the Plaintiff argues that Kong agreed to be bound to the NDA because ICI could only share the confidential information it received pursuant to the NDA with representatives "who agree[d] to maintain the confidentiality of such information in accordance with the terms of" the NDA. ECF No. 469 at 11-12 (quoting ECF No. 1-3 at §1(b)).[3] But still, there is no implicit or explicit agreement between Kong and Edgemere.  Section 11 of the NDA plainly states, that "[e]ach party shall be responsible for any breach of this Agreement by any of its Representatives." ECF No. 1-3 at § 11. During the Hearing, ICI conceded that if Kong used the confidential information improperly under the NDA, then ICI would be responsible for the breach rather than Kong. Here, the Court finds that the only "parties" to the NDA were Lifespace, Edgemere, and ICI and that Kong is a representative of ICI for purposes of its receipt of information pursuant to the NDA. As a representative of ICI, Kong is not in privity of contract with Edgemere. Therefore, the Court grants the Motion as to Count 1 for breach of the NDA against Kong.

---

[3] At the Hearing, the Plaintiff asserted that Kong was a party to a direct agreement with Edgemere, but these allegations are not contained in the Amended Complaint.

**b.  Count 2 – Promissory Fraud**

The Plaintiff has pleaded its fraud claim with the particularity required by Rule 9, as incorporated by Bankruptcy Rule 7009, and the Court will deny the Motion as to the second cause of action. The Plaintiff asserts that ICI entered into both the NDA and the Forbearance Agreement with no intent to perform; namely, that ICI sought to use the confidential information obtained under the NDA for an improper purpose to destroy Edgemere's business. ECF No. 422 at ¶ 171-173. The Defendants claim that the Plaintiff's factual allegations regarding ICI's relationship with Kong undermine and foreclose the Plaintiff's theory that ICI entered the NDA without the present intent to perform because Kong and ICI did not work together until months later. ECF No. 444 at 5.

A claim for fraud must comply with the heightened standards of Rule 9(b), which requires a party to plead fraud with particularity. FED. R. CIV. P. 9(b). Rule 9(b) typically requires the plaintiff to identify the "who, what, when, where, and how of the alleged fraud." *In re Dual D Health Care Operations, Inc.*, No. 17-41320-ELM, 2021 WL 3083344, at *5 (Bankr. N.D. Tex. July 21, 2021). This includes identifying the communications that are allegedly fraudulent, who made the statements, where and when they were made, and why they should be considered fraudulent. *Herrmann Holdings, Ltd. v. Lucent Technologies Inc*., 302 F.3d 552, 564-65 (5th Cir. 2002). While fraud must be pleaded with particularity, it "may be pleaded without long or highly detailed particularity." *Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 632 (5th Cir. 1999).

Under Texas Law, the elements of a fraud claim are: (1) a material representation; (2) that was false when made; (3) the speaker knew it was false or made it without knowledge of its truth or falsity; (4) the speaker intended that the representation be relied upon; (5) the plaintiff acted in reliance on the representation; and (6) the plaintiff was injured as a result. *Cheetah Gas Co., Ltd.*

*v. Chesapeake Louisiana, L.P.*, No. CIV.A. H-08-3237, 2009 WL 499051, at *2 (S.D. Tex. Feb. 25, 2009). Further a promise of future performance can constitute fraud only if "the promise was made with no intention of performing at the time it was made." *Id.* (quoting *Guidry v. United States Tobacco Co.*, 188 F.3d 619, 632 (5th Cir. 1999). Here, the main issue is whether the Plaintiff sufficiently pleaded that ICI entered into the NDA with no present intent to perform.

In the Amended Complaint, the Plaintiff, through his promissory fraud claim, alleges that ICI entered into the Forbearance Agreement without the intent to negotiate in good faith, and that ICI entered the NDA without the intent to keep the information confidential in a nefarious attempt to use such information to compete with Edgemere. ECF No. 422. The Defendants assert that the Plaintiff's own factual allegations run contrary to the allegation that ICI entered the NDA without the present intent to perform. ECF No. 444 at 5-6. Specifically, the Defendants argue that Plaintiff's allegation that Kong first reached out to ICI two months *after* the NDA was signed negates the allegation that ICI entered into the NDA without the present intent to perform. *Id.* at 5. Plaintiff argues that just because the alleged breach occurred after ICI signed the NDA does not speak to *ICI's intent* when it signed the NDA. ECF No. 469 at 15.

The Court agrees with the Plaintiff. It is plausible that ICI had no intent to perform under the Forbearance Agreement, and that it entered into the NDA for a nefarious purpose. That Kong entered the picture two months later, does not negate or even speak to ICI's present intent. Thus, the Court finds that the Plaintiff has pleaded facts that can plausibly support an allegation that ICI entered the NDA with a lack of intent to perform. This Court has previously held that the Plaintiff's promissory fraud claim as to the Forbearance Agreement in its Original Complaint satisfied Rule

9(b)'s heightened pleading requirement.[4] ECF No. 99 at 12. Here, the Court finds that Amended

Complaint only builds off the Original Complaint, and if anything provides more factual

allegations, and thus satisfies the heightened pleading standard of Rule 9(b). Therefore, the Court

denies the Motion as to Count 2 for promissory fraud.

### c. <u>Count 3 – Tortious Interference with Existing Contractual and Business Relationships</u>

The Amended Complaint contains sufficiently plausible allegations that Kong tortiously

interfered with the Ground Lease, the NDA, and the Forbearance Agreement. In the Amended

Complaint, the Plaintiff claims that the Kong interfered with three separate contracts between

Edgemere and ICI, including the Ground Lease, the Forbearance Agreement, and the NDA. ECF

No. 422 at ¶ 182. The Defendants assert that Kong could not have interfered with the Plaintiff's

existing business relationships with ICI because Kong was acting as ICI's agent. ECF No. 444 at

6-7. The Plaintiff counters that he has asserted alternative arguments in the Amended Complaint

that demonstrate that Kong, at times, was working on its own behalf and not as ICI's agent. ECF

No. 469 at 16.

To state a claim for tortious interference with an existing contract, a plaintiff must show

"(1) an existing contract subject to interference, (2) a willful and intentional interference with the

contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss."

*Centennial Bank v. Holmes*, No. 5:23-CV-044-H, 2024 WL 733649, at *23 (N.D. Tex. Feb. 20,

2024) (quoting *Prudential Ins. Co. of Am. V. Fin. Rev. Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000)).

---

[4] The Defendants do not address the Plaintiff's promissory fraud claim as to the Forbearance Agreement in the Motion or their Response. At the hearing, Defendants' counsel responded to the Court's questioning regarding the promissory fraud claim as to the Forbearance Agreement that "promissory fraud with respect to the Forbearance Agreement is not an issue that we've addressed. To the extent that the complaint adequately advances that, then it stands." ECF No. 488 at 31.

Generally, the acts of a corporate agent on behalf of his or her principal are deemed to be the corporation's acts. *Latch v. Gratty, Inc.*, 107 S.W.3d 543, 545 (Tex. 2003). Therefore, to show that an agent has interfered with their principal's contract, a plaintiff must prove that the agent acted solely "in furtherance of [his or her] personal interests so as to preserve the logically necessary rule that a party cannot tortiously interfere with its own contract." *Id.* (quoting *Holloway v. Skinner*, 898 S.W.2d 793, 796). The plaintiff may satisfy its burden by proving that the agent acted "so contrary to the corporation's interests that his or her actions could only have been motivated by personal interest." *Id.* (quoting *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 432). Further, an agent cannot be held to have acted against the principal's interests unless the principal has objected. *Id.*

The Plaintiff asserts that the Amended Complaint contains alternative arguments that Kong, at times, might have been acting as an agent and there are other parts where Kong is working on its own. ECF No. 469 at 16. Under Rule 8, as incorporated by Bankruptcy Rule 7008, "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones." FED. R. CIV. P 8(d)(2). Further, "[a] party may state as many separate claims or defenses it has regardless of consistency." *Id.* at 8(d)(3). Courts have held that "a party should not assert inconsistent or alternative allegations 'unless, after a reasonable inquiry, the pleader legitimately is in doubt about the factual background or legal theories supporting the claims or defenses.'" *Samsung Elecs. Am., Inc. v. Yang Kun "Michael" Chung,* No. 3:15-CV-4108-D, 2018 WL 1532383, at *7 (N.D. Tex. Mar. 29, 2018) (quoting 5 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1285, at 741 (3d ed. 2004)). Therefore, the Court must determine whether the Plaintiff properly pleaded his allegations in the alternative.

Here, the Defendants argue that the Plaintiff foreclosed on the alternative pleading argument when it alleged in the "Parties" section of the Amended Complaint that "[a]t all relevant times, Kong has been acting both as an agent for [ICI] and for its own interests." ECF No. 422 at ¶ 16.[5] The Plaintiff counters that throughout the Amended Complaint there are well-pleaded facts that demonstrate that there is a question whether Kong always worked as an agent for ICI. For example, the Plaintiff alleges that "Kong developed and implemented a plan and media blitz designed to prevent any default under the Ground Lease from being cured." ECF No. 422 at ¶ 183. Further, the Plaintiff alleges that Kong used Edgemere's confidential information "for its *own* competitive purpose by developing a media campaign designed to remove Edgemere as the operator under the Groundlease." Id. at ¶ 184 (emphasis added).  At the Hearing, the Plaintiff admitted that the wording of Paragraph 16 in the Amended Complaint was inartfully drafted, but that the paragraph was supposed to mean that Kong was "acting either for, as an agent, and/or just in their own self-interest." ECF No. 488 at 35. The Plaintiff further asserts that there is still discovery to be done to fully develop his claims. *Id.* at 30.

The Court agrees that the language in paragraph 16 of the Amended Complaint is less than clear. However, the information is contained in the "Parties" section, where a court rarely sees substantive legal theories espoused. Secondly, and more importantly, in a Rule 12 motion, a court must grant all inferences in favor of the Plaintiff. When analyzing the facts in the light most favorable to the Plaintiff, the Court construes Paragraph 16 to mean that Kong was acting either as an agent for ICI and/or for their own self-interests. Throughout the Amended Complaint there are facts that demonstrate Plaintiff's alternative allegations that Kong acted both in its own interest

---

[5] The Defendants further point out that they admitted the allegation that Kong was working as ICI's agent in their Answer to the Amended Complaint. *See* ECF No. 429 at ¶ 16.

and as an agent of ICI. For instance, the Plaintiff alleges in paragraphs 35-39 of the Amended

Complaint that Kong was aware of the Ground Lease and began to design its scheme to take over

the Ground Lease *before* ever engaging ICI. *See* ECF No. 422 at ¶¶ 35-39. Although the parties

have taken substantial discovery in this case, the Court finds that the Plaintiff could remain

legitimately in doubt about the facts in question because important discovery has yet to be

conducted.

Because the Plaintiff successfully pleaded Kong's role in the underlying facts in the

alternative, the Court finds that the Amended Complaint contains sufficiently pleaded facts to state

a plausible claim for tortious interference with an existing contractual relationship and therefore

denies the Motion as to Count 3.

### d.  Business Defamation and Disparagement

The Court will address Count 5 for business defamation and disparagement out of order

because the Court's ruling on Count 5 is a condition precedent to the Court's ruling on Count 4.

The Amended Complaint contains plausible factual allegations as to its business defamation and

disparagement claim, and the Court will therefore deny the Defendants' Motion as to the fifth cause

of action. In the Amended Complaint, the Plaintiff alleges that the Defendants' communications

with Dallas Morning News ("**DMN**"), the Residents, and the Bondholders "imputed some kind of

fraud, deceit, dishonesty, or reprehensible conduct in its business." ECF No. 422 at 63. Particularly,

the Plaintiff alleges that the Defendants "provided DMN and others, and orchestrated DMN's

publication of, information in such a way that it created a substantially false and defamatory

impression by omitting material facts or juxtaposing facts in a misleading way." *Id.* at 64. On the

other hand, the Defendants contend that the Plaintiff's claim for business defamation and

disparagement fails because the statements were expressions of opinion and not verifiably false statements of fact. ECF No. 444 at 9.

To state a defamation claim under Texas law, a plaintiff must show (1) the publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault, at least amounting to negligence, and (4) damages, in some cases. *Innovative Block of S. Texas, Ltd. v. Valley Builders Supply, Inc.*, 603 S.W.3d 409, 417 (Tex. 2020). The elements of business disparagement are more stringent than those of defamation because business disparagement protects economic interests against a pecuniary loss. *Id.* The publication of a disparaging statement concerning the product of another is actionable when (1) the statement is false, (2) published with malice, (3) with the intent that the publication cause pecuniary loss or the reasonable recognition that it will, and (4) pecuniary loss does in fact result. *Id.* Here, the Defendants challenge the first element of a business disparagement claim and state that the disputed statements are non-actionable opinions and are not verifiable facts.

To be actionable, a statement must be a factual assertion; expressions of opinion are not actionable. *Teel v. Deloitte & Touche LLP*, No. 3:15-cv-2593-G, 2015 WL 9478187, at *4 (N.D. Tex. Dec. 29, 2015). "Whether an alleged defamatory statement constitutes an opinion rather than a verifiable falsity is a question of law." *Lilith Fund for Reproductive Equity v. Dickson*, 662 S.W.3d 355, 362 (Tex. 2023). To evaluate this question, courts focus "the analysis on a statement's verifiability and the entire context in which it was made." *Bentley v. Bunton*, 94 S.W.3d 561, 581 (Tex. 2002).

The Texas Supreme Court has held that "an allegedly defamatory publication should be construed as a whole in light of the surrounding circumstances based upon how a person of ordinary intelligence would perceive it." *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 114 (Tex.

2000). The Court further stated that "a publication can convey a false and defamatory meaning by omitting or juxtaposing facts, even though all the story's individual statements considered in isolation were literally true or non-defamatory." *Id.* Therefore, whether a publication is false or defamatory "depends on a reasonable person's perception of the entirety of a publication and not merely on individual statements." *Id.* at 115.

Here, the Plaintiff alleges in the Amended Complaint that the Defendants made several defamatory statements. The Plaintiff alleges that the Defendants "defamed Edgemere by intentionally communicating to others that Edgemere was running a 'ponzi-esque' scheme." ECF No. 422 at ¶ 206.  Further, the Plaintiff allege that the Kong defamed Edgemere when it went on the record stating that "[i]t's unfair and unjust for Edgemere to continue to take deposits from future residents under current circumstances" and that Kong "fear[ed] the residents are on a sinking ship and some of them may not even know it." *Id.* at ¶ 208. The Defendants assert that these allegedly defamatory statements are actually non-actionable opinions instead of verifiable facts. ECF No. 444 at 10. Defendants further argue that they presented verifiable facts to DMN to support their view of Edgemere's "ponzi-esque" structure.[6] *Id.*

While admittedly a close call, the Court finds that when reviewing all the allegedly defamatory statements as a whole, in the light most favorable to the Plaintiff, the Plaintiff has adequately stated a claim for business defamation and disparagement. The Fifth Circuit has defined a Ponzi scheme as a "fraudulent investment scheme in which money contributed by later investors generates artificially high dividends or returns for the original investors, whose example attracts

---

[6] During the Hearing, the Defendants also argued that Kong cannot be responsible for the way that the Dallas Morning News published its statements. This argument was first brought up during oral argument and was not briefed in the Motion or the Reply. Courts generally do not consider points raised for the first time at oral argument. *Harrison v. Wells Fargo Bank, N.A.*, No. 3:13-CV-4682-D, 2016 WL 1392332, at *7 (N.D. Tex. Apr. 8, 2016). Therefore, the Court declines to consider this argument at this time.

even larger investments." *Janvey v. Alguire*, 647 F.3d 295, 301 (5th Cir. 2007). It is widely synonymous with fraud. Texas courts have determined that statements that a business was "Ponzi-like" were verifiable factual assertions. *Bass v. United Dev. Funding, L.P.*, No. 05-18-00752-CV, 2019 WL 3940976, at *18-19 (Tex. App.—Dallas Aug. 21, 2019, pet. denied). A reasonable reader could view the statement that "that Edgemere was running a 'ponzi-esque' scheme" as a factual assertion that Edgemere's business practices were fraudulent in some way. *See* ECF No. 422 at ¶ 206. The Plaintiff has also pleaded sufficient facts to call into doubt the veracity of whether Edgemere was running a "ponzi-esque" scheme. The Court finds that this allegation is enough at this stage of the litigation to maintain the Plaintiff's business defamation and disparagement claim and does not herein address any other allegedly defamatory statements. Therefore, the Court denies the Motion as to the Plaintiff's fifth cause of action.

### e.   Count 4 – Tortious Interference with Prospective Contractual and Business Relationships

The Amended Complaint contains plausible allegations as to the Plaintiff's claim for tortious interference with prospective contractual and business relations, and the Court will therefore deny the Defendant's Motion as to the fourth cause of action. The Plaintiff claims that the Defendants' alleged conduct, in disclosing confidential information in breach of the NDA, significantly contributed to the decline of Edgemere's business. ECF No. 422 at ¶ 191-192. Specifically, the Plaintiff pleads that "[b]y engaging in direct, improper discussions with the Residents while under the NDA with Edgemere, and by making false and malicious statements to [the Dallas Morning News] … Defendants either acted with a conscious desire to prevent Edgemere's prospective contractual and business relations from occurring, or knew that interference was certain or substantially certain to occur as a result of their conduct." *Id.* at ¶ 191. The Defendants assert that the Plaintiff failed to plead an independently tortious activity. The Court

finds that the Plaintiff has adequately pleaded the requisite independent tort, namely a claim for business defamation and disparagement (Count 5). Accordingly, the Court will deny the Motion as to the fourth cause of action.

The elements of tortious interference with prospective business relations under Texas law are: (1) a reasonable probability that the claimant would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately cause the claimant injury; and (5) the claimant suffered actual damage or loss as a result. *D'Onofrio v. Vacation Publications, Inc.*, 888 F.3d 197, 214 (5th Cir. 2018); *In re THEAF North Arlington LLC*, Adv. No. 19-04034, 2020 WL 7330055, at *31 (Bankr. N.D. Tex. Dec. 11, 2020). To state a claim for tortious interference with a prospective business relationship, one must allege that the act of interference was independently tortious or wrongful. *Id.*

Here, the independently tortious activity that the Plaintiff alleges interfered with Edgemere's prospective contractual and business relationships is business defamation and disparagement. The Court has already determined that the Plaintiff has sufficiently pleaded the cause of action for business defamation and disparagement. Therefore, the requirement for an underlying independent tort is met. The Amended Complaint contains sufficient allegations to support the Plaintiff's claim for tortious interference with prospective contractual and business relationships; thus, the Court denies the Motion as to the fourth cause of action.

**f.   Count 7 – Civil Conspiracy**

The Court previously ruled that the Plaintiff sufficiently pleaded a claim for civil conspiracy in the Original Complaint under a Rule 12(b)(6) standard in its Dismissal Order. ECF No. 99. The Court finds that the Plaintiff's Amended Complaint contains more details than those laid out in the Original Complaint. Again in the Motion, the Defendants challenge the Plaintiff's civil conspiracy claim on the grounds that it does not allege the required independently tortious activity.  The Court has already found that the Plaintiff has sufficiently pleaded the causes of action underlying the Plaintiff's civil conspiracy claim, namely, the claims for promissory fraud and business defamation; therefore, the Court will likewise deny the Motion as to the Count 7 for civil conspiracy on these grounds

The Defendants also assert that Kong and ICI are legally incapable of conspiring with one another because Kong was acting as ICI's agent. *Id.* at 11-12. As previously explained, the Plaintiff has the right to plead in the alternative, which allows the Plaintiff to plead inconsistent facts as to the existence of an agency relationship between Kong and ICI. Therefore, the fact that the Plaintiff pleads that Kong served as an agent to ICI in the alternative is not fatal to the civil conspiracy claim.

Civil conspiracy is a derivative tort, which means that liability for civil conspiracy depends on participation in an underlying tort. *Homoki v. Conversion Services, Inc.*, 717 F.3d 388, 402 (5th Cir. 2013). Therefore, to adequately plead a claim for civil conspiracy, the plaintiff must allege both a claim for conspiracy and a claim for an underlying tort. *Id.* The elements of a civil conspiracy include: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result." *Tri v. J.T.T.*, 162 S.W.3d 552 (Tex. 2005).

Here, the Court finds, as it did in its Dismissal Order, that the Plaintiff has sufficiently pleaded causes of action for tortious interference, fraud, and defamation. Therefore, the requirement for an underlying tort is met. Further, the Court finds that the Plaintiff successfully pleads in the alternative as to the existence of an agency relationship between Kong and ICI. Therefore, the Amended Complaint contains sufficient allegations to support the Plaintiff's civil conspiracy claim; thus, the Court denies the Motion as to the seventh cause of action.

### g.   **Count 8 – Equitable Subordination**

The Court finds that the Plaintiff has pleaded plausible allegations as to the equitable subordination count in its Amended Complaint, and the Court will deny the Motion thereon. The Plaintiff alleges that ICI has engaged in inequitable conduct in order to destabilize Edgemere's business. As such, the Plaintiff requests the Court order that all existing and future claims of ICI under the Lease be equitably subordinated to all other allowed claims in Edgemere's Bankruptcy Proceeding, including the residents' claims and bondholders' claims. ECF No. 422 at 68-69. The Defendants repeat the assertion from their Motion to Dismiss that equitable subordination applies in limited circumstances, none of which are present or plausibly pleaded by the Plaintiff. ECF No. 444 at 14.

A bankruptcy court may equitably subordinate the claims of a creditor under § 510(c) of the Bankruptcy Code. In the Fifth Circuit, equitable subordination is appropriate when three preconditions are met: (1) the claimant engaged inequitable conduct; (2) the conduct resulted in harm to the creditors or conferred an unfair advantage upon the claimant; and (3) equitable subordination is not inconsistent with the Code. *Official Comm. of Unsecured Creditors v. Cajun Elec. Power Coop., Inc.* (*In re Cajun Elec. Power Coop., Inc.*), 119 F.3d 349, 357 (5th Cir. 1997); *In re Mobile Steel Co.*, 536 F.2d 692, 700 (5th Cir. 1977). Equitable subordination is inappropriate

if any element is not satisfied. *In re Equipment Equity Holdings, Inc.*, 491 B.R. 792, 842 (Bankr. N.D. Tex. 2013). Further, equitable subordination is remedial, not penal, and in the absence of actual harm, is inappropriate. *Id.* (citing *Wooly v. Faulkner* (*In re SI Restructuring, Inc.*), 532 F.3d 355, 361 (5th Cir. 2008)). Under Fifth Circuit precedent, equitable subordination has *typically* been found proper in three scenarios: (1) when a fiduciary of the debtor misuses his position to the disadvantage of other creditors; (2) when a third party controls the debtor to the disadvantage of other creditors; and (3) when a third party actually defrauds other creditors. *Cajun Electric*, 119 F.3d at 357.

It has been often recognized that equitable subordination is a fact-intensive cause of action that is not generally susceptible to a motion to dismiss. *In re Reagor-Dykes Motors, LP*, No. 18-50214-RLJ-11, 2021 WL 1219537, at *10 (Bankr. N.D. Tex. Mar. 30. 2021). Equitable subordination is additionally not subject to the heightened pleading requirements for fraud-based claims under Rule 9(b). *In re Life Partners Holdings, Inc.*, 926 F.3d 103, 122 (5th Cir. 2019). Here, the Plaintiff has alleged that ICI engaged in certain inequitable conduct, encompassed in his claims for breach, tortious interference, and fraud. The Court has found these claims sufficient to survive the judgment on the pleadings. Accepting the well-pleaded facts underlying those causes of action as true, and viewed in the light most favorable to the Plaintiff, the Court denies the Motion as to the Plaintiff's Count 8 for equitable subordination as it did in its Dismissal Order.

## V.    <u>Conclusion</u>

The Court, in accepting all well-pleaded facts as true and viewing them in the light most favorable to the Plaintiff, finds that the Amended Complaint, other than the claim for breach of contract against Kong, contains sufficient factual allegations to state plausible causes of action. Therefore, based upon the foregoing and the record before the Court, it is hereby

**ORDERED** that the Defendants' Motion for Judgment on the Pleadings is hereby **GRANTED IN PART AND DENIED IN PART**, as set forth more fully in the Order.

### ###END OF ORDER###